### Silas M. Smith *vs.* Inhabitants of Lee.

If an insane pauper, having his settlement in this commonwealth, and confined under sentence in a house of correction, is duly committed by order of a judge of probate to a state lunatic hospital, the town where such pauper has his settlement is liable for the expenses of his support, even after the expiration of the time for which he was sentenced to the house of correction.

CONTRACT brought by the treasurer of the State Lunatic Hospital at Northampton to recover for the expenses of the support of Simeon Reynolds, an insane pauper having his settlement in the town of Lee, from the 14th of November 1863 to the 1st of April 1865. The defendants demurred to the declaration, and the demurrer was sustained in the superior court; and the plaintiff appealed to this court. The facts are more fully stated in the opinion.

*S. T. Spaulding,* for the plaintiff, cited, besides statutes referred to in the opinion, *Jennison* v. *West Springfield,* 13 Gray, 544; *Amherst* v. *Shelburne,* 11 Gray, 107, and cases cited; *Jennison* v. *Roxbury,* 9 Gray, 32; *Brookfield* v. *Allen,* 6 Allen, 585 · *Deerfield* v. *Greenfield,* 1 Gray, 514, 585; *Watson* v. *Charlestown,* 5 Met. 54; *Commonwealth* v. *Cambridge,* 20 Pick. 267; *Foster* v. *Worcester,* 16 Pick. 71; *Mendon* v. *County of Worcester,* 10 Pick. 235; *Holbrook* v. *Holbrook,* 1 Pick. 248.

*M. Wilcox,* for the defendants.

DEWEY, J.*    Simeon Reynolds, the person for whose support
in the Northampton Lunatic Hospital this action is instituted
against the town of Lee, was sentenced to imprisonment in the
house of correction in Lenox for the term of four months, for the
offence of being a common drunkard.    On the day subsequent
to his commitment, upon the representation of the attending
physician of the house of correction to the master thereof, that
Reynolds appeared to be insane, the master transmitted the
report to the judge of probate of said county, who, after inquiry
into the facts therein stated, ordered his commitment as an in-
sane person to the superintendent of the Northampton Lunatic
Hospital, requiring him to receive the said Reynolds into said
hospital, and to detain him therein until discharged therefrom in
due course of law.    It is admitted that Reynolds, at the time
of his arrest, sentence and imprisonment in the house of correc-
tion, and commitment to the hospital, had both his residence
and settlement in the town of Lee, and was a poor person, in
need of relief and without kindred liable by law for his support,
of all which the selectmen and overseers of the poor of the
town of Lee had immediate notice.    He was committed to the
hospital, as it would seem, under the provisions of Gen. Sts.
*c.* 180, § 4.    The proceedings were in accordance with that stat-
ute, and not apparently under *St.* 1862, *c.* 223.

The question is, whether under such commitment the hospital
may recover of the town of Lee the expenses for the support
of Reynolds while at the hospital.    Enactments have from time
to time been made, authorizing the commitment, to the insane
hospitals, of persons confined under sentence of courts for crimi-
nal offences.    By Rev. Sts. *c.* 145, such authority was given as
to persons who might become insane while imprisoned in the
county jail.    The *St.* of 1853, *c.* 259, extended it to the case of
persons confined in the house of correction.    The provision was
made more extensive by *St.* 1854, *c.* 95, by including all insane
persons in a jail or house of correction, whether they were in-
sane when committed, or became so afterwards, and this was

---

* This case was argued in writing in vacation after September term 1865.

reënacted in Gen. Sts. *c.* 74, § 7, with also the further provision in *c.* 180, § 4, authorizing the judge of probate for the county in such case to cause the prisoner to be removed to one of the state lunatic hospitals.

In none of these statutes was any direct provision made as to the support of the insane person thus sent there, or any enactment as to the persons or corporation liable for such support, if the party was a pauper or unable to support himself. The Gen. Sts. *c.* 73, had made a general provision as to the liability of towns for persons sent to the hospital, and § 23 might be construed to embrace this by its general terms; but all the sections of that statute as to the support of such persons are now superseded and directly repealed by *St.* 1862, *c.* 223. This last statute seems to have been intended as a general revision of the law in reference to lunatic hospitals, and has a general provision, § 10, as to the expenses of lunatics supported there, having a known settlement in this commonwealth. It also provides for various forms of commitment to the hospital, but has not embodied in it the provisions of *c.* 180, § 4, nor has it repealed any part of that chapter, although it has repealed many sections of *c.* 73. Since no specific provision has been made as to the expenses, or the persons or corporations liable for the support of lunatics who are removed to the hospital from jails or houses of correction while under sentence for crime, we may reasonably suppose that these cases were provided for under the general provisions as to expenses of inmates of the hospital.

The general policy, as indicated by the various statutes, seems to be that the expense of supporting lunatics committed to the hospital shall, in case of inability of the person committed, and in the absence of any person chargeable with such support, be paid by the town in which they had their residence at the time of their commitment, if they had a settlement within this commonwealth. Rev. Sts. *c.* 48, §§ 9, 10. *St.* 1837, *c.* 228. *St.* 1841, *c.* 77. Gen. Sts. *c.* 73, § 23.

In view of these facts, *St.* 1862, *c.* 223, § 10, may without any forced construction be held to provide generally as to the expenses of inmates at the state lunatic hospitals committed under

any legal authority, and not to be confined to the particular cases of commitments specially authorized by that statute.

The terms of that section are sufficiently broad to include all cases of commitment to the hospitals under legal authority. Its language is " that the expenses of the state lunatic hospitals for the support of lunatics having known settlements in this state shall be paid quarterly, either by the persons obligated to pay, or by the place in which such lunatics had their residence at the time of their commitment, unless other sufficient security is taken, to the satisfaction of the trustees, for such support."

If this section can be held applicable to commitments under Gen. Sts. *c.* 180, § 4, the facts of the present case bring it directly within its provisions, and would charge these expenses upon the town of Lee.

As already stated, the admitted facts are, that Reynolds was a poor person in need of relief, without kindred liable by law for his support, and that he had both his residence and legal settlement in Lee.

But the defendants insist that *St.* 1862, *c.* 223, has no reference to cases of insane persons sent from the prisons and houses of correction under sentence for crime, and that the power given by sections 13, 14 and 15 of this statute to certain officers and magistrates to set at liberty the inmates of the hospitals clearly indicates this, inasmuch as such persons are under sentence for crime, and are at the time held by such sentence and are to be returned to prison or the house of correction, if restored to sanity before the expiration of their sentence.

The sections referred to may have reference to a different class of inmates, but this would not necessarily show that § 10, having reference only to the expenses of support at the hospital, and the persons to be charged therewith, may not have a more extended application.

Again; it is urged that by Gen. Sts. *c.* 178, § 51, all charges and expenses for keeping and maintaining convicts sentenced to houses of correction are to be paid by the county, and only in cases of sentence for certain specified offences named in Gen. Sts. *c.* 161, § 21, and *c.* 165, § 28, can the county recover anything

of the town where the party had his residence and settlement, and then not to exceed one dollar per week. The answer to this objection is, that the expenses thus referred to, which are to be paid by the county, are expenses incurred for support at the house of correction. This is quite obvious from the language of the further provision, that payment is only to be made, " the accounts of the keeper or master being first settled and allowed by the commissioners."

It is urged that the proceedings preliminary to the order for removal of the party to the lunatic hospital in the case of one in prison under sentence differ materially from those prescribed in *St.* 1862, *c.* 223 ; that in the former no previous notice is required to be given to the town, while in the latter, it is provided that before an order of commitment is made, notice must be given to one or more of the selectmen of the town where the lunatic resides. It is true that many of the sections in that statute do not apply to a case like the present; but this by no means proves that a provision, general in its terms, and having no reference to the form of commitment, or the authority by which the insane person was sent to the hospital, but simply providing how and by whom the expenses incurred for the support of lunatics at the hospital shall be paid, may not apply to the case of a commitment under *c.* 180, §.4.

It is then further insisted that in no event should the town of Lee be charged for the support of Reynolds beyond the period of his sentence, which was for four months, and if they were liable for a person thus removed to the hospital while under sentence, without the previous notice and other proceedings requisite in commitments under *St.* 1862, *c.* 223, yet that liability must be limited to the period of the sentence, and, if the party was to be further detained, then new proceedings should have been instituted under the provisions of *St.* 1862.

This point is not free from difficulty. But there are strong considerations that may be urged against sustaining the position thus taken by the defendants. If it be correct, then the power of the hospital to control the insane man as one of its inmates ceases at the expiration of the term of his sentence,

without any regard to the fitness of his being set at liberty, and without any action on the part of those charged with the duty of deciding upon the propriety of his discharge from the hospital. Such a result would be wholly inconsistent with the purposes of his removal to the hospital. He is sent there as an insane man, and the fact of his·having been under sentence for crime is only material when he shall be restored to his right mind before the term of his sentence has expired.

It seems to us more proper to hold that if the party was not set at liberty on the expiration of his sentence, but was detained as a fit subject for the hospital, the town in which he had his residence and settlement, having had previous notice of his commitment to the hospital and proper notice of the expenses incurred in maintaining him there, should have made an application for his discharge, if in the opinion of the selectmen or overseers of the poor he was a fit subject to be set at liberty. Thus the interests of all concerned would have been properly guarded. The town of Lee having had notice from time to time of the continuance of Reynolds at the insane hospital, and that the hospital claimed to charge the town with the expenses of his support after the expiration of his sentence, and neglecting to make any application to the proper authority for his discharge, he must be held to have been properly detained there as an insane patient, and the town of Lee, where he had at the time of his commitment both his residence and legal settlement, must be held chargeable with the expenses thereof, under the general provisions of *St.* 1862, *c.* 223, § 10.

*Judgment for the plaintiff.*